32092.   W. T. RAWLEIGH COMPANY *v.* KELLY *et al.*

DECIDED OCTOBER 7, 1948.   REHEARING DENIED NOVEMBER 13, 1948.

*William T. Revell*, for plaintiff.

*M. C. Barwick*, for defendants.

GARDNER, J. ■ In the outset we might say that the overruling of the demurrer of the plaintiff to the defendants' amended answer was not error. The answer as amended set up a good defense. The next question, then, is whether the evidence supports such a plea. The evidence, without dispute, shows that Mrs. J. M. Moore never signed the contract as surety, and that so far as the evidence reveals, she never authorized anyone to sign it for her, and that she did not even know it during her lifetime. The evidence is also undisputed that the agent for the plaintiff who procured the contract represented to the defendants, T. B. Kelly and J. W. Overstreet, at the time he presented the contract to them to sign as surety, that it had been signed by Mrs. Moore. There appears in the evidence

also a report of W. M. Campbell bearing date of December 3, 1930 (evidently after the principal had made default in his transactions with the company and this appears from the record to be approximately 18 years before suit was filed), who procured the contract: "One of his plans [meaning Overstreet's] to beat the contract is that he claimed I knew that the contract had the forged signature when I mailed it with the first order. I don't think he can prove that, for I did not know it was forged until I wrote you about it. . . But I plainly told Mr. Overstreet that the contract was turned over to me and as far as I knew the signatures were regular, accepted it as such and mailed it to the company, and so far as we knew it was a good contract and signed by all sureties in person, and that we still contended that it is good, and were holding all three sureties responsible for the account jointly." We think it thus clear that the jury were authorized to find that the evidence sustained the plea of the defendants and did not demand a verdict for the plaintiff.

It might be well to discuss the legal contentions of the plaintiff that the plea of the defendants sought to alter and vary the terms of a written instrument. This contention is based on this provision of the contract: "It is mutually agreed that this contract is binding upon the parties who sign it whether it is signed by any other party or not, and that statement made to any of the sureties by any person as to how many other parties will sign this surety agreement shall not affect the rights of the seller." Under this provision of the contract the plea of the defendants did not seek to alter, vary or change the terms of the contract. It would have been different if the agent had told the defendants that Mrs. Moore was going to sign the contract. This would have been a promise to do a thing in the future and would have fallen within the teeth of the quoted provision. It would not have amounted to fraud. But to state that Mrs. Moore had signed the contract and that her signature was genuine was a misrepresentation of material existing fact, —quite a different thing, and a fraudulent thing in law which would avoid the contract. *Marchman* v. *Robertson*, 77 *Ga.* 40; *Lynchburg Shoe Co.* v. *Daniels*, 23 *Ga. App.* 186 (98 S. E. 107). The principle of law set forth in these citations under the facts of those cases is operative against the plaintiff more strongly

than the principle of law to which we have called attention, under the facts of the instant case.

The plaintiff contends that the fraud and false statement of Campbell can not be charged against the plaintiff for two reasons: First, the agent was not employed to make false statements and when he did he was not acting within the scope of his authority; and second, he was a special agent to secure signatures of sureties only and it was the duty of the defendants to inquire into his authority to make such statements before they accepted and acted upon the contract. These contentions are without merit. The principal accepted the contract procured by the agent and when it affirmed the contract it became responsible for the agent's acts. We know of no principle of law that would permit a principal to accept the benefits of a contract procured by fraud and at the same time be relieved of the agent's fraudulent conduct in procuring it. *Loyless* v. *Hesse Envelope &c. Co.*, 10 *Ga. App.* 660 (74 S. E. 90).

It is contended further by the plaintiff, first, that the misrepresentations did not hurt the defendants because Mrs. Moore did not file a plea of non est factum; and second, until she avoided what was apparently her contract of suretyship, no damage could occur to these defendants. As to the first point, it must be kept in mind that the gist of the action before us is based on the allegations of fact that the misrepresentation that Mrs. Moore had signed the contract induced these defendants to sign. It is not a question of a plea of non est factum of Mrs. Moore. She was never sued. According to the record, she had been dead approximately ten years before the suit was filed, and no service was ever perfected on her or on her estate. In a contract of suretyship it is not essential to prove a release that a surety allege or prove a loss. The Code, § 103-203 lays down three acts on the part of a creditor which will release a surety: (1) injury to the surety; (2) increasing the risk to the surety; and (3) exposing him to greater liability. Any one of these three acts will discharge a surety. See, in this connection, *Cloud* v. *Scarborough*, 3 *Ga. App.* 7 (2) (59 S. E. 202); *Kenney* v *Armour Fertilizer Works*, 33 *Ga. App.* 126 (126 S. E. 284). We are not unmindful that the Supreme Court in *Armour Fertilizer Works* v. *Kenney*, 161 *Ga.* 477 (131 S. E. 281),

reversed the Court of Appeals decision. But the reversal was not based on any principle of law regarding release of sureties, as under the facts of the instant case. The reversal was based, in the main, on a contract between the creditor and surety entered into after the execution of the surety contract. The jury were authorized the find, under the evidence, that the false representation that Mrs. Moore had signed the contract when she had not, increased the risk of the defendants and exposed them to greater liability.

The plaintiff contends also that the plea came too late. It came in the original answer. It was amplified by amendment in response to a special demurrer; and it is further contended that the amendment was not sworn to as required by the Code, § 81-1310. The provisions of that section have no applicability to the plea in the instant case. This contention is without merit under the provisions set out in that Code section, first, because it is not a new defense, but information furnished in response to a special demurrer; second, notice of it was given in the original plea; third, no objection was made to it on the ground that it was not sworn to.

Special grounds: (a) Special ground 1 contends that the defendants' plea of avoidance could not be urged in the absence of a plea of non est factum on behalf of Mrs. Moore. We have already dealt with this contention hereinbefore, and it is without merit. With reference to the other portions of special ground 1, they are without merit because it is not pointed out therein what principle of law the court should have charged.

In special ground 2 the court was requested in writing to instruct the jury that in the event the defendants did not sustain the affirmative defense, a verdict was demanded for the plaintiff. This was nothing more than a request for the court to direct a verdict. It is never error not to direct a verdict. The whole charge of the court amply instructed the jury as to the burden of proof which rested upon the parties to sustain their respective contentions.

Special ground 3: The plaintiffs cite as sustaining their contention *W. T. Rawleigh Co.* v. *Overstreet,* 71 *Ga. App.* 873 (32 S. E. 2d, 574). The facts in that case and what the court held to be the law in no wise conflict with what we here hold.

16

Under the facts of that case, as in the instant case, it was a question for a jury.

■ Special ground 4 of the amended motion is similar to the contentions in the immediately preceding ground, with the additional contention that the court did not "construe" the evidence in more detail. The charge as a whole was sufficient and this contention is without merit.

Special ground 4 further complains that the court in charging with reference to misrepresentations of a material fact, omitted the word "wilfully" in that he charged the jury with reference to misrepresentations of material fact "made to deceive" whereas the language of the Code is "made wilfully to deceive." While the word "wilfully" is in the statute, in view of the whole charge, under the facts of this case, in our opinion such omission does not require a reversal.

■ Special ground 5 complains of a charge which the court made with reference to the affirmative plea of the defendants. We have passed on this question in dealing with the exceptions pendente lite. We have held that the plea was good. This being so, in view of the evidence introduced to sustain it, the charge is good. Further complaint is made of the following excerpt from the charge of the court: "The burden of proof in the present case rests upon the plaintiff to prove its case by a preponderance of the evidence. If it has done so, the burden would then shift to the defendant to establish their affirmative defense alleging fraud in the inducement of execution of the contract sued on by a preponderance of the evidence. You will decide the material issues involved in this case in favor of that party with whom you find the preponderance of the testimony lies upon those material issues." Error is assigned on this excerpt: (a) that this charge was insufficient in law; (b) that it was equivalent to the direction of a verdict for the defendants' affirmative defense; and (c) that the use of the word "testimony" instead of the word "evidence" was confusing and misleading to the jury. These contentions are without merit and require no reversal, in view of the facts of this case and the entire charge.

■ Special ground 6 assigns error because the court failed to charge: (1) that fraud which would relieve from a contract of a party who can read must be such as prevents him from

reading it; (2) in failing to direct a verdict for the plaintiff. These contentions are obviously without merit and need no further comment in view of what we have already said.

The court did not err in overruling the motion for a new trial as amended for any of the reasons assigned.

*Judgment affirmed.* *MacIntyre, P. J., and Townsend, J., concur.*