73520. POTOMAC LEASING COMPANY v. THRASHER.
(354 SE2d 210)

CARLEY, Judge.

Appellant-plaintiff Potomac Leasing Company is in the equipment leasing business. It does not, however, directly employ any leasing agents. Instead, appellant operates in the following manner: Salesmen, who are themselves actually employed by manufacturers or distributors of products, are provided with blank copies of appellant's leasing documents and are instructed with regard to how those docu-

ments are to be filled out. When a salesman visits a potential customer for his particular product, in addition to being authorized by his employer to negotiate a direct purchase, he is also authorized by appellant to negotiate a lease of the product to the customer. In connection with the customer's lease of a product, the salesman will fill in appellant's documents with the relevant information, secure the customer's signature, and send the completed documents to appellant. If appellant accepts the lease as negotiated by the salesman of the product, appellant will purchase the product from the salesman's manufacturer or distributor. Appellant then receives the stipulated monthly rental from the customer.

Appellee-defendant was visited by a salesman who was directly employed by Omni Specialty Equipment Company (Omni). As the result of this visit, appellee did not purchase any equipment from Omni, but he did sign one of appellant's lease contracts, whereby he agreed to rent an Omni ice cream machine. The lease of the equipment that Omni's salesman negotiated with appellee was sent to and accepted by appellant. Appellant then purchased the equipment from Omni and began to receive monthly rental payments from appellee. Shortly thereafter, appellee, asserting that the equipment had failed to perform as it had been represented by the Omni salesman, ceased to make rental payments and attempted the tender of the equipment back to appellant. Appellant refused the tender of the equipment and initiated this action to recover the balance due under the terms of the written lease agreement negotiated by the Omni salesman. Appellee answered and included among his defenses fraud in the inducement of the lease.

The case came on for trial before a jury and, after appellant's motion for a directed verdict was denied, a jury verdict in favor of appellee was returned. Appellant appeals, its sole enumeration being that the trial court erred in denying its motion for a directed verdict.

1. "A principal who accepts a contract procured by fraudulent conduct of an agent, regardless of such agent's authority, is bound by such fraudulent conduct of the agent in procuring such contract." *W. T. Rawleigh Co. v. Kelly*, 78 Ga. App. 10 (2b) (50 SE2d 113) (1948). One ground of appellant's motion for directed verdict in the trial court was that no misrepresentations made by the Omni salesman concerning the ice cream machine could be attributed to it because, as a matter of law, the salesman was not its agent. In this regard, appellant relied upon its witness' denial of the existence of such a relationship and upon the following provision of its written lease agreement: "Neither [the] Vendor[, Omni,] nor any salesman is an agent of [appellant] nor are they authorized to waive or alter the terms of this lease. Their representations shall in no way affect [appellee's] or [appellant's] rights or obligations as herein set forth."

The denial by appellant's witness of an agency relationship and the language in appellant's lease document that the Omni salesman did not occupy the status of its agent are not necessarily conclusive as to the non-existence of such a relationship. The applicable legal principle is merely that such denials on the part of appellant "must be received as evidence of a fact which [can]not be overcome by bare assertions by a third party not supported by facts. [Cits.]" *Stewart v. Ga. Mut. Ins. Co.*, 159 Ga. App. 91, 93 (1) (282 SE2d 728) (1981). As proof of the existence of an agency relationship in the case sub judice, appellee did not merely rely upon bare assertions unsupported by facts. Here, as in *ADBE Distrib. Co. v. Hun. East Credit Corp.*, 156 Ga. App. 787, 788-789 (1) (275 SE2d 347) (1980), the evidence that an agency relationship existed between appellant, as the lessor, and the Omni salesman, as its leasing agent, was sufficient, notwithstanding any assertion by appellant to the contrary.

Appellant attempts to analogize the existing circumstances to that wherein a car salesman, who is directly employed by a dealership and who has misrepresented an automobile to a prospective purchaser, also assists the customer to secure the necessary financing for the purchase through the extension of credit by an entity other than the dealership. In those circumstances, the alleged fraudulent conduct of the salesman occurred in connection with the initial sale of the product itself, not the subsequent financing. The defrauded customer's legal remedies are thus assertable only against the car dealership, as the salesman's principal in the underlying sale, rather than against the financing entity, whom the salesman may have represented in the subsequent extension of credit to the customer. In this case, however, there was no sale of equipment to appellee by Omni and no extension of credit by appellant to appellee. Rather than the two-step process involved in a credit sale, the Omni salesman was authorized either to sell his employer's product to a customer *or* to negotiate a lease from appellant. Appellee was not privy to appellant's purchase of the equipment from Omni. Appellee merely entered into a lease of Omni equipment directly with appellant. In these circumstances, appellee's legal remedies with regard to fraudulent inducement of the lease are assertable against appellant, as the lessor of the equipment and as the principal of the one whose misrepresentations allegedly induced the lease agreement. Appellant occupies the same position as does the dealership whose salesman induced the sale of a vehicle, not that of the innocent financier who extended credit. The trial court did not err in denying appellant's motion for directed verdict on the ground that there was no evidence of agency.

2. As another ground in support of its directed verdict motion, appellant contended at trial and contends on appeal that the merger clause contained in the lease agreement should estop appellee from

asserting that he relied upon the Omni salesman's misrepresentations.

With the exception of contracts controlled by the provisions of Article 2 of the Uniform Commercial Code, Georgia law recognizes that two actions are equally available to one who was fraudulently induced by misrepresentations into entering a contract. The defrauded party can "affirm the contract and sue in contract for breach or he [can] seek to rescind the contract and sue in tort for alleged fraud and deceit. [Cits.]" *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974). However, depending upon which of the two actions is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery. See generally *Roth v. Bill Heard Chevrolet*, 166 Ga. App. 583 (305 SE2d 31) (1983). If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory. "[T]he question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury." *City Dodge, Inc. v. Gardner*, supra at 770.

Fraud in the inducement of a contract, in addition to being assertable affirmatively as the basis for a cause of action, may also be pleaded as a defense to an action, at least in those cases which are not controlled by the provisions of Article 2 of the Uniform Commercial Code. See generally *Nichols v. Lanier*, 164 Ga. 445 (2) (139 SE 2) (1927). "Fraud renders contracts voidable at the election of the injured party." OCGA § 13-5-5. It is fraud as a contractual defense that is an issue in this case. Accordingly, cases such as *City Dodge*, supra, and *Roth*, supra, which discuss the assertion of fraud affirmatively, are not necessarily controlling authority here. The legal principles applicable to fraud as a contractual defense are: "A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." OCGA § 13-4-60. The evidence here shows that appellee "satisfied the tender requirement of the law applicable to this case." *Brown v. Techdata Corp.*, 238 Ga. 622, 627 (234 SE2d 787) (1977). The cases establish that appellee's successful efforts to effect a rescission of the lease would have the same ultimate legal effect with regard to his contractual defense of fraud as a rescission would have in an action in tort for fraud and deceit. "One induced by fraud to sign a written contract may set up the fraud in defense to an action against him on the contract. . . . The rule that parol agreements shall not be received to

change or add to the terms of a written contract does not apply where the alleged contract was procured by fraud. A stipulation in a contract that the provisions thereof constitute the sole and entire agreement between the parties and that no modification thereof shall be binding on either party unless in writing and signed by the seller can have no bearing in a case where fraud to induce the contract is the issue. [Cits.]" *Kimbrough v. Adams*, 65 Ga. App. 536, 538 (16 SE2d 96) (1941). See also *Williams v. Toomey*, 173 Ga. 199 (2) (159 SE 866) (1931). Accordingly, the contractual defense of fraud in the inducement by oral misrepresentations is the functional equivalent of a tort action for fraud and deceit and the trial court did not err in denying appellant's motion for directed verdict on the ground that the merger clause estopped appellee from proving such oral misrepresentations as induced his entry into the underlying lease agreement.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 26, 1987.

*Gary D. Stokes, Carter L. Stout*, for appellant.
*Howard T. Scott, Bradley L. Wolff*, for appellee.